CRANCER ET AL., DOING BUSINESS AS VALLEY STEEL
PRODUCTS CO. ET AL., *v.* LOWDEN ET AL., TRUS-
TEES.

No. 505. Argued March 3, 4, 1942.—Decided March 16, 1942.

*Mr. Irl B. Rosenblum,* with whom *Mr. Abraham B. Frey*
was on the brief, for petitioners.

*Mr. Hale Houts,* with whom *Mr. William S. Hogsett*
was on the brief, for respondents.

632

Mr. Justice Byrnes delivered the opinion of the Court.

In the District Court for the Eastern District of Missouri respondents brought this suit to recover certain freight charges from petitioners. The case was tried without a jury and judgment rendered in favor of respondents in the sum of $2,263.47. On appeal, the judgment was affirmed by the Circuit Court of Appeals for the Eighth Circuit. 121 F. 2d 645.

We brought the case here because of the claim that the courts below sustained the jurisdiction of the District Court although the matter concerned called for the exercise of the administrative discretion of the Interstate Commerce Commission, under the established rule first announced in *Texas & Pacific Ry. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426, as explained in *Great Northern Ry. Co.* v. *Merchants Elevator Co.*, 259 U. S. 285.

The shipments, amounting to seven carloads, moved from points in several states, the cars being billed by petitioners to themselves at St. Louis, Missouri. The petitioners billed the contents of the cars as scrap iron and paid the tariff charge applicable to that classification. When the cars arrived at St. Louis, the respondents caused the Western Weighing and Inspection Bureau to inspect their contents. As a result of that inspection, respondents claimed that the articles were actually "pipe thread protecting rings" and that they belonged in the classification of "pipe fittings." The tariff rates on pipe fittings being higher than the rate on scrap iron, demand was made upon petitioners for the difference in freight charges. The demand was refused and this suit followed.

The trial court found that the articles in question were governed by the tariff for "pipe fittings" and not by that for "scrap iron." The Circuit Court of Appeals sustained this finding. In the light of certain proceedings

before the Interstate Commerce Commission, affecting the articles in question and their relation to the tariffs in controversy, we hold that the lower courts were right.

The only questions of any moment presented by this case arise in connection with these proceedings before the Interstate Commerce Commission. In 1937, petitioners filed with the Commission a complaint against a number of railroads, in which they asserted that certain shipments of iron or steel pipe thread protecting rings should have been classified under the freight tariffs as scrap iron or steel and not as pipe fittings. They also urged, as an alternative contention, that even though the shipments were classed as pipe fittings rather than scrap, the rate was unreasonably high. On August 6, 1937, the Commission dismissed the complaint, holding both that the pipe thread protecting rings fell within the classification of pipe fittings and that the rates so imposed were not unreasonable. Crancer & Fleischman v. Abilene and Southern Ry. Co., 223 I. C. C. 375.

In their answer and in a motion to stay proceedings filed in the District Court in the present case, petitioners asserted that, on or about March 16, 1939 (the date on which respondents brought this suit), they had instituted a second action before the Commission. In their complaint in this 1939 action, petitioners alleged that the freight charges demanded by the respondents on the shipments involved in the suit now before us were "unjust and unreasonable . . . to the extent that they exceeded or exceed rates applicable on scrap iron and scrap steel." It is not clear from this language whether petitioners intended to raise anew the question of classification, or whether they were simply requesting the Commission to pass again on the reasonableness of the rate. But in its opinion dated February 18, 1941, the Commission stated: "While com-

plainants admit for the purpose of this proceeding that the rates on scrap iron are not applicable, they contend that reasonable rates on thread protectors should bear some definite relation to the scrap-iron rates." Valley Steel Products Co. *v.* Atchison, T. & S. F. Ry. Co., 243 I. C. C. 509, 512. We conclude that the classification question is not involved in the 1939 I. C. C. proceeding. This proceeding is still pending. The effective date of the February 18, 1941 opinion and order has been indefinitely postponed, a further hearing has been held, but no subsequent opinion or order has been issued.[1]

Petitioners raise two contentions with respect to these I. C. C. proceedings and their bearing upon the present suit. First, they contend that it was reversible error for the District Court to admit in evidence a copy of the 1937 opinion of the Commission. At the trial, petitioners objected to its admission on the ground that the opinion has "absolutely no probative value in this case at all," that it is not "determinative" or "conclusive" and "not even persuasive" in this case, and that there was no pleading that "this opinion . . . is *res adjudicata* of the issues before your Honor." With respect to this point, we can only say that petitioners have made a bold attempt to transform their weakness into strength. The present case turns upon whether these iron pipe thread protecting rings are to be classified under the freight tariffs as pipe fittings or scrap. That was the very question decided by the Commission in its 1937 opinion, and it was decided adversely to petitioners. It is true that the shipments in the two cases are not the same and that no evidence was introduced to prove that their contents were identical.

---

[1] Order of the Commission in No. 28215, dated April 19, 1941; Order in No. 28215, dated May 23, 1941; Order in No. 28215, dated June 2, 1941; Order in No. 28215, dated June 20, 1941; Order in No. 28215, dated July 22, 1941.

Consequently, the issues in the present suit are not *res adjudicata*. But the Commission's 1937 opinion could hardly have been more relevant to the question before the District Court. As the Circuit Court observed: "Since the case was tried without a jury, we can see no possible prejudice to appellants by the consideration of the opinion of the Commission by the Court as evidence, rather than by an examination of the same opinion in his library. There is no suggestion that the latter course would have been improper. The trial court did not treat the opinion as being *res adjudicata*." 121 F. 2d 645, 650. We think this is the least that could be said, and that the District Court properly admitted and considered the administrative determination of virtually the same question as that before it.

Second, petitioners contend that the District Court erred in denying their motion to stay proceedings in this case pending action by the I. C. C. in the second proceeding before the Commission. As we have said, the classification question alone was involved in the case before the District Court. The Commission had passed upon that question almost two years earlier. In their newly instituted proceeding, petitioners did not resurrect that dispute but confined themselves to the contention that the rates on pipe fittings were unreasonable as applied to their pipe thread protecting rings. The issue of the reasonableness of the rates was not open to the District Court. The meaning of the tariff had been determined by the Commission. It remained to the railroad only to collect the rates for which the tariff called and for the District Court only to see that the railroad did collect them. "Until changed, tariffs bind both carriers and shippers with the force of law. Under § 6 of the Interstate Commerce Act the carrier cannot deviate from the rate specified in the tariff for any service in connection

with the transportation of property. That section forbids the carrier from giving a voluntary rebate in any shape or form. This Court has had occasion recently to sustain action of the Commission aimed at carriers'' practices resulting in collection of less than the tariff rate. It is equally important to aid the efforts of a carrier in collecting published charges in full. Involuntary rebates from tariff rates should be viewed with the same disapproval as voluntary rebates." *Lowden* v. *Simonds-Shields-Lonsdale Grain Co.,* 306 U. S. 516, 520, 521. Nothing involved in the pending administrative proceedings before the Interstate Commerce Commission was essential to the determination of the issue in this suit. If the trial judge had, in the exercise of his discretion, continued the trial of the cause until such time as the Commission had passed upon the reasonableness of the rate, the delay might have made it impossible for the carrier to produce the witnesses who had made the inspection of the shipments. On the other hand, the petitioners suffered no hardship as a result of the trial court's insistence on proceeding with the trial. If petitioners pay the judgment in this case, and the Commission should, in the still pending proceeding, decide to modify the tariffs, petitioners can obtain a complete remedy by way of reparation. *Pennsylvania R. Co.* v. *International Coal Mining Co.,* 230 U. S. 184, 197. The form of the Circuit Court's judgment specifically preserved petitioners' right to such reparation. We hold that under the circumstances there was no abuse of discretion by the trial judge.

*Judgment affirmed.*