**ARKANSAS OAK FLOORING CO. et al. v.
LOUISIANA & ARKANSAS RY. CO.**

No. 11966.

Circuit Court of Appeals, Fifth Circuit.

Feb. 20, 1948.

Writ of Certiorari Denied May 24, 1948.

See 68 S.Ct. 1338.

LEE, Circuit Judge, dissenting.

———◇———

Nicholas J. Gantt, Jr., of Pine Bluff, Ark., for appellants.

T. W. Holloman, of Alexandria, La., and A. L. Burford, of Texarkana, Tex., for appellee.

Before HUTCHESON, McCORD, and LEE, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was to collect the local rate of 20¢ per hundred pounds on shipments of 35 carloads of rough hardwood lumber, shipped from Woodville, Miss. and delivered to defendant at Alexandria, La., on varying dates from September 12, 1942, through May, 1943.

The claim was: that, under the provisions of Rough Material Tariff 140.[1] I.C.C. No. 1540, the shipments of rough lumber moved under, and plaintiff had collected from defendant, the net transit rate of 12¢ per hundred pounds; that defendant, as to each of such shipments, having failed to reship the manufactured tonnage as required by the tariff, the transit rate ceased to be applicable, and the carrier was required to exact, and the shipper to pay, the local rate less the credit of 12¢ already paid.

There were two defenses. One of these was estoppel by conduct in this: that defendant was not furnished with a copy of plaintiff's Rough Material Tariff; that it, therefore, did not know, nor was it informed, of the 12 months' limit for reshipment; that plaintiff had in times past permitted shipments of manufactured lumber after 12 months from delivery of the rough lumber; and that it had thus misled defendant and estopped itself from suing for the local rate as to the shipments in question. The other was that the cause of action as to each shipment had, under Sec. 16(3) (a) and (e) of 49 U.S.C.A., accrued on the delivery of the rough lumber at Alexandria more than two years before the suit was brought, and its bringing was, therefore, prescribed under that section.

The district judge, of the view that the tariff had the force of law and bound plaintiff and defendant equally, had no difficulty in rejecting the estoppel defense. As to

the bar of the statute, he found: that, the lumber having been shipped under the Rough Material tariff on the 12¢ transit rate provided for thereby, plaintiff's cause of action for the 20¢ local rate did not, and could not, accrue upon delivery at Alexandria; that it accrued when the year provided in the tariff for the reshipment of the finished lumber had expired without such shipment; and that the suit, having been brought September 11, 1945, within two years, as to each shipment, of the time when suit could have been brought, was timely brought. He, therefore, gave judgment for plaintiff.

As to defendant's reliance on Sec. 16(3) (e), providing, "the cause of action in respect of a shipment of property shall, for the purposes of this section, be deemed to accrue upon delivery or tender of delivery thereof by the carrier, and not after", the court followed Henwood v. McCallum & Robinson, Inc., 179 Tenn. 531, 167 S.W. 2d 981, 982. There it was determined that under a transit or "floating in" tariff on cotton of the general nature of the tariff in question here, "delivery", as used in the statute, must be held to refer to delivery not of the rough, but of the finished product, or, if there is failure of such delivery, the time when, for failure thereof, the higher or local rate became due and the cause of action for it accrued.

Appellant is here urging its defense of estoppel rather feebly, but pressing upon us vigorously and with confidence its defense of the statutory bar.

■■ We need not dwell long on the defense of estoppel. The Rough Material Tariff, under which these shipments moved, is, as matter of law, controlling, and we know of no principle upon which the carrier could be estopped to demand payment in accordance with it. Indeed, the estoppel

[1] In order to secure the net transit rate of 12¢ and the credit privileges held out in the tariff, the tariff required the defendant to execute a contract and bond agreeing to reship finished products manufactured at Alexandria from the inbound rough lumber, weighing 30% thereof, within 12 months from the date of paid freight bills covering inbound movements of such rough hardwood lumber. If defendant failed to ship out within the time prescribed thereby sufficient manufactured tonnage to fulfill the requirements of the tariff, the net transit rate no longer applied, but the full local rate, 20¢ for 100 pounds, which should and would have applied on the shipments involved in this case except for the rough material tariff and defendant's executing contract and bond in compliance therewith, became applicable.

in law works the other way. The carrier is estopped by the law from demanding or receiving, the shipper from paying, less than the full rate.[2]

On the question of the statutory bar, however, the path of the law is not so clear. Appellant insists: that the effect of the Rough Material Tariff and of the contract and bond given under it was not to prevent the causes of action for the local rate here sued on from accruing when the delivery of the rough lumber was made at Alexandria, the only delivery of property the carrier made in this case; that these had only the effect of an effort by contract to extend the period within which suit might be brought on the local rate; and that under Midstate Horticultural Co. v. Pennsylvania R. Co., 320 U.S. 356, 64 S.Ct. 128, 88 L.Ed. 96, they are wholly ineffectual to so extend it. Supporting its view, that this must be held to be the effect of the giving of the contract and bond, is the general principle declared in that case, that the statute intended to make the time to sue uniform in all cases. Supporting this view, too, is the generality of the statement of Subd. 3(e) of Sec. 16, "The cause of action in respect of a shipment of property shall, for the purposes of this section, be deemed to accrue upon delivery or tender of delivery thereof by the carrier, and not after."

If, however, as contended by appellee, the Rough Material Tariff has the force and effect of law to fix the transit rate as the rate applicable when the shipment was delivered at Alexandria, then the causes of action for the local rate, on which plaintiff has sued, did not and could not then accrue. Indeed, they did not accrue until one year after the Alexandria delivery when defendant, having failed to ship manufactured lumber as required therein, the transit rate ceased to apply, and the local rate became applicable.

■ We agree with appellant that the parties could not, and neither could the commission, extend or restrict the period within which to sue after the cause of action had accrued. We agree with it, too, that if the transit rate is denied effect as a rate, lawfully fixed by tariff and given the effect only of an agreement for credit and for extension of time to pay, of course the rate due by the shipper was the 20¢ local rate. Of course, too, this rate would then be due when the rough shipment arrived at Alexandria, the cause of action would then accrue, and no agreement to delay suit would have any effect to extend the time within which to sue.

■ We agree with appellee, though, that it is plain enough that here is no private contract to extend the time to sue. Here is a binding tariff fixing a transit rate much less than the local rate, to be enjoyed by the shipper, upon conditions, one of which was that he enter into a contract and bond obligating himself to comply with the provision for the shipment of manufactured lumber upon pain of becoming disentitled to the transit rate and obligated to pay the local rate. If the Rough Material Tariff is thus given its legal effect, the local rate was not the applicable rate when the rough lumber delivery was made. The carrier had no right to claim it, and no cause of action for failure to pay it arose until, its provisions not having been complied with, the shipper lost its right to have the transit rate applied, the local rate became the applicable tariff, and the right to sue for it accrued.

If, therefore, it were not for the conflict presented by the attempt to apply both (a) and (e) of subd. (3), Section 16 to the facts of this case, it would present no difficulty whatever. For it is plain enough that the suit was brought within the two years after the cause of action had in fact accrued. The difficulty arises upon appellant's insistence that under Subd. 3(e), we are bound to hold that the cause of action, as that term is used in (a) and (e) of Subd. 3, for the local rate sued on here, in law arose when the delivery of the rough lumber was made, and that the contract under which, part of the local rate was collected, credit was extended for the balance, and

[2] Midstate Horticultural Co. v. Pennsylvania R. Co., 320 U.S. 356, 64 S.Ct. 128, 88 L.Ed. 96; Boone v. United States, 6 Cir., 109 F.2d 560; Crancer v. Lowden, 315 U.S. 631, 62 S.Ct. 763, 86 L. Ed. 1077.

the carrier agreed to forbear suit for one year was a mere contract to extend the time to sue. We think this view more plausible than sound, and that the construction and application of the statute contended for by appellee accords with its common sense, its reasonable meaning and intent.

■ As pointed out in the Midstate case, the prime purpose of the statute, in fixing the same period after their accrual for suing on all actions, was to secure uniformity and to prevent discrimination. Full effect can be given this purpose if it is held that delivery by the carrier accrues the cause of action on all shipments under a tariff where the rate is then unalterably fixed. Where, however as here, the transit rate, the only collectible rate at the time of delivery, was, under the tariff subject to change within the year, the cause of action for the local rate cannot be said to have accrued at the time of the delivery but one year thereafter.

If this were a case where instead of collecting the freight on delivery as required under Sec. 3(2), 49 U.S.C.A., the carrier had, as provided in that section, merely extended credit under commission rules and regulations, the extension of credit would not, of course, at all affect the time within which the carrier might sue. But the bond and contract executed here were not executed for that purpose. They were executed for the purpose of enabling the shipper to avail itself of the Rough Material tariff by giving the promise, to ship out manufactured goods, upon which its right to that tariff depended.

■■ Courts must, of course, construe statutes as they are written. They may not rewrite them to suit their views of what they think the statutes ought to say or to avoid difficulties in construing and applying them. On the other hand, when a court is presented with a situation of this kind where a clause drawn to cover, and covering, shipments moving to one destination is sought to be applied to shipments moving under transit tariffs, that is with two destinations in mind, it is not compelled to apply the clause literally or at all,

if such application will result in applying the statute as a whole in a way completely contradictory of its main and paramount purpose.

The majority thinks it quite plain: that the main, the paramount purpose of Sec. 16(3) as a whole is, as stated in subdivision (a), to fix, as the time for suing, two years from the accrual of the cause of action; that a cause of action accrues only when the right to sue has fully matured;[3] and that subdivision (e) of the section was not intended to, nor does it, have any different effect.

It may not be doubted, we think, that plaintiff could not have sued for the local rate until 12 months after delivery of each shipment, nor could it have sued then unless defendant had failed, in compliance with the applicable transit tariff, to ship manufactured lumber as agreed.

■ We, therefore, hold that clause (e), Subd. (3), Sec. 16 of the Statute, providing that the cause of action will be deemed to have accrued at the time of the delivery of the shipment, while applicable in the case of a shipment under a tariff whose charges are due on delivery, is without application here. This is so because, under the terms of the tariff under which these shipments moved, the only charge which accrued on delivery or could accrue if its terms were carried out, was 12¢. The charge for which plaintiff sues, the 20¢ due on the local rate, crediting the 12¢ already paid, was not due on delivery and did not become due until 12 months thereafter. Clause (e) of the statute declaring that the cause of action accrued on delivery of the shipment could not, therefore, be reasonably interpreted as applying to this case.

We think that the right result was reached in the Henwood case, but we are not satisfied with the reasons there given. We do not agree with the statement there made that "delivery" as used in Sec. 16(3) (e) could and should be read as applying to the contemplated second, instead of the first, delivery, and thereby the statute made to square with the in transit tariff involved

---

[3] Federal Reserve Bank, etc., v. Atlanta Trust Co., 5 Cir., 91 F.2d 283, 284, 117 A.L.R. 1160; United States v. Wurts, 303 U.S. 414, 58 S.Ct. 637, 82 L.Ed. 932.

in Henwood's case and here. We believe that the proper disposition of this case is to hold: that the dominant intent of the statute as a whole is to afford two years for suit after the right of action has accrued; that plaintiff's right to sue on the causes of action asserted here had not in fact accrued on the delivery of the shipment; that Sec. 16(3) (e) has, therefore, no application to a shipment of this kind; and that the case must be decided by determining, under Subd. (a), whether the suit was in fact brought within two years after the cause of action, that is the right to sue, had in fact and in law accrued. We think it was so brought and that the judgment must be affirmed.

LEE, Circuit Judge (dissenting).

The only shipments involved in this action are the shipments of rough hardwood lumber from Woodville, Miss., to Alexandria, La., between September 12, 1942, and May 12, 1943. The freight charges claimed by appellee represent the unpaid balance of charges from these shipments. By Section 3, paragraph 2 of the Interstate Commerce Act, 49 U.S.C.A. § 3(2), payment of freight at Alexandria was prerequisite to delivery of shipments by appellee. This payment, however, was subject to such rules and regulations as the Commission had prescribed.[1] Whether the finished products manufactured from this inbound rough lumber would be shipped out in sufficient tonnage within the time prescribed to secure a through-tariff rate under I.C.C. Tariff No. 1540 was, to put it mildly, uncertain. In order to secure the benefit of the through-transit rate and *the credit privilege* with respect to the freight then due, the appellant executed a contract agreeing to reship sufficient finished products within the time limit and gave bond to secure the payment of the amount of the unpaid freight if it failed to reship as it had agreed. Appellant failed to keep its agreement. It never shipped out the finished product, hence the through-rate never came into existence. Appellee's claim, therefore, is, as stated, for the unpaid balance of the freight on the shipments of rough lumber into Alexandria. By Section 16(3) (e), appellee's cause of action accrued when these shipments were delivered at Alexandria on and prior to May 12, 1943.[2] Under Section 16(3) (a), the cause of action became extinct two years after the cause of action accrued and could not be extended by agreement.[3] Midstate Horticultural Co. v. Pennsylvania R. Co., 320 U.S. 356, 64 S.Ct. 128, 88 L.Ed. 96.

I would reverse the judgment appealed from.

---

[1] 49 U.S.C.A. § 3 (2) provides: "No carrier by railroad subject to the provisions of this chapter shall deliver or relinquish possession at destination of any freight transported by it until all tariff rates and charges thereon have been paid, *except* under such rules and regulations as the commission may from time to time prescribe to govern the settlement of all such rates and charges * * *." (Emphasis added.)

[2] 49 U.S.C.A. § 16(3) (e) provides:

"The cause of action in respect of a shipment of property shall, for the purposes of this section, be deemed to accrue upon delivery or tender of delivery thereof by the carrier, and not after."

[3] 49 U.S.C.A. § 16(3) (a) provides: "All actions at law by carriers subject to this chapter for recovery of their charges, or any part thereof, shall be begun within two years from the time the cause of action accrues, and not after."