**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PLUMBERS & PIPE FITTERS LOCAL UNION 214, Respondent.**

No. 13493.

United States Court of Appeals Seventh Circuit.

Jan. 26, 1962.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Melvin J. Welles, Attorney, National Labor Relations Bd., Washington, D. C., Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Washington, D. C., for petitioner.

Richard L. Cates, Madison, Wis., Lawton & Cates, Madison, Wis., for respondent.

Before DUFFY, CASTLE and SWYGERT, Circuit Judges.

DUFFY, Circuit Judge.

This is a petition by the Labor Board for enforcement of its order issued on June 2, 1961 against Plumbers & Pipe Fitters Local Union 214, hereafter called the Union. The decision and order are reported at 131 N.L.R.B. No. 122.

D. L. Bradley is a plumbing and heating contractor and a journeyman pipefitter. He was a member of the Plumbers Union, and in 1958 transferred his membership to Local 214. As Bradley is, in effect, the D. L. Bradley Plumbing & Heating Company, hereinafter each will be referred to as "Bradley."

The Board found the Union violated Sec. 8(b) (2) and (1) (A) of the Act, 29 U.S.C.A. § 158(b) (2), (1) (A) by causing Bradley to discharge one H. Maynard Hall because he was not a member of the Union.

There is no dispute as to certain pertinent facts. In the latter part of April or early in May, 1959, Kraiss, the Un-

ion's business agent, told Bradley to "* * * [G]et rid of the man [Hall] * * * because he was a non-union member." Bradley was instructed to discharge Hall and Kraiss threatened not to furnish workers to Bradley unless Hall was discharged. About May 15, 1959, Bradley personally received a letter from the Union directing him to appear before the Union to answer a charge that he "was working at the trade with nonmembers."

On May 25, Bradley wrote Hall and told him that because of the trouble he was having with the Union, he would not be able to use him any longer. On June 23, Bradley personally appeared before the Union and he was given a suspended fine of $50 provided that "it would never happen again." Within a day or two thereafter, the Union began to refer workmen to Bradley. On November 23, Hall filed charges of unfair labor practices with the Board alleging that the Union had discriminatorily caused Bradley to discharge him because he was not a member of the Union.

The Union does not contest the Board's finding that it caused Hall's discharge. Such conduct is proscribed by Sec. 8(b) (2) and (1) (A) of the Act. N. L. R. B. v. Local 60, United Brotherhood of Carpenters and Joiners of America, AFL-CIO, et al., 7 Cir., 273 F.2d 699, 701. However, the Union strongly urges the Board could not properly find it guilty of unfair labor practices because more than six months had elapsed between its demand that Hall be discharged and the filing of the charge by Hall which was the basis of the complaint.

Section 10(b) of the Act, 29 U.S.C.A. § 160(b), provides, in part: "* * * no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board * * *." The critical question before us is when the Union's unfair labor practices occurred.

Section 8(b) (2) of the Act makes it unlawful for a Union to "cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) * * *." It thus appears there are two separate union unfair labor practices described in this portion of Sec. 8(b) (2); one, causing a discriminatory discharge, and two, attempting to cause a discriminatory discharge. The Union did not "cause" Bradley to discriminate against Hall until May 25. Surely, it was not until May 25 that a charge could have been filed alleging the Union had violated that section by causing Hall's discharge. It does not seem reasonable to argue that the statutory limitations period begins to run before the violation occurs.

To hold that the running of a limitations period can begin only when the unfair labor practice occurs, is in accord with well-established principles. We said in Dusek v. Pennsylvania Railroad Company, 7 Cir., 68 F.2d 131, "As a proposition of general applicability to statutory limitations it may be said that a cause of action has not accrued, so as to start the running of the limitation, until such time as suit upon it may properly be brought." To the same effect, it was stated by the Fifth Circuit, "It is of the essence of these statutes [of limitation] that time begins to run under them as to causes of action only after the right to prosecute them to a successful conclusion has fully accrued." Federal Reserve Bank of Atlanta v. Atlanta Trust Company, 5 Cir., 91 F.2d 283, 286, 117 A.L.R. 1160.

Hall hardly could have been expected to file charges before he was discharged. In the usual case such a demand is not communicated to the individual whose discharge is sought, and it seems logical that the six months' limitation period would begin with the discharge rather than the demand therefor.

The discharge itself was not the only significant event within the six months' period. On May 28, and again on June 15, the Union formally directed Bradley to appear before its Executive Board, and on June 23, when Bradley finally did appear to answer the charges, a fine of $50 was imposed. These occurrences in themselves are sufficient to distinguish the case relied on by the Union. Local

Lodge No. 1424, I. A. M., et al. (Bryan Mfg. Co.) v. N. L. R. B., 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832.

The Board's order dated June 2, 1961 will be enforced.