## EMMONS COAL MINING COMPANY ET AL. *v.* NOR-FOLK & WESTERN RAILWAY COMPANY.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 70.  Argued December 10, 1926.—Decided January 3, 1927.

A tariff governing demurrage at a coal-loading port provided that a car should be considered released when a vessel registered for the cargo or fuel supply of which the coal was part, or when the car was unloaded prior to such registry; that to avoid delay of switching out and delivering on shipper's order in actual sequence of their arrival cars containing the same grade of coal, "the dates on which cars should have been released will be substituted for those on which equivalent tonnage was actually delivered, and detention will be computed on the basis of such substituted dates"; and that the date when a shipment was transferred by written order and acceptance to another party should be the date of release of the car as to the original consignee, and subsequent detention should be charged to new consignee without free time allowance. *Held,* that a decision of the Interstate Commerce Commission should be followed which construed these provisions as applicable when, pursuant to a pooling and exchange arrangement among several shippers, the loaded cars of one shipper were delivered on the order of another, like cars of the former being retained for the latter and detention chargeable to the latter being computed from the notice of arrival of his own coal to time of delivery on his order of the substituted tonnage.  P. 712.

3 F. (2d) 525, affirmed.

ERROR to a judgment of the Circuit Court of Appeals which affirmed a judgment of the District Court (287 Fed. 168) in favor of the Railway, in its action to recover demurrage charges from the Coal Company and its surety, the Fidelity & Casualty Company of New York.

*Mr. J. T. Manning, Jr.;* with whom *Mr. William G. Wright* was on the brief for plaintiffs in error.

*Mr. J. Hamilton Cheston,* with whom *Messrs. F. M. Rivinus* and *Theodore W. Reath* were on the brief, for defendant in error.

Mr. Justice Holmes delivered the opinion of· the
.Court.

This is a suit by the Norfolk and Western Railway
.Company to recover demurrage on cars at Lambert's
Point, Virginia, from the Emmons Coal Mining Com-
pany and its surety.  An affidavit of defence upon ·mat-
ters of law was filed, but was held insufficient by the ·
District Court, 287 .Fed. 168, and judgment subsequently
was entered for the plaintiff.  The judgment was affirmed
by the Circuit Court of Appeals.  3 F. (2nd) 525.

To facilitate the .delivery· of coal at tidewater some of
the owners of mines upon the lines of the Railway made
· an arrangement with the latter by which the cars were
sorted at Lambert's Point upon different tracks according ·
to the quality of the coal, and delivery was made to their
respective customers from the cars most convenient at
the moment, irrespective of· ownership, if the seller had
that amount of coal on hand in cars within the space
limits agreed.  To work this out the parties formed an
association, called the Lamberts Point Coal Exchange,
with a manager who kept books in which he credited to
each owner coal destined to the Point as soon as it passed
Bluefield, West Virginia, noting its quality, and ordered
delivery within the amount so credited, as required, to
the owner's customers.  .If the delivery were required to
be from the consignor's own cars, as it would be in the
absence of agreement, of course if the cars were detained
beyond the allowed time. demurrage would be payable.
When under the arrangement one member's cars were
emptied to fill the order of another member, other cars
with similar coal would have to be kept, in order to satisfy
the first member's right when it came to assert it, and it
should pay as in the first case, since the delay would be
the same to the railroad whichever of its cars were de-
ained.  The responsibility of the owner for them is the

natural corollary of the benefit that each owner gets by having its order filled from the nearest cars.

In the present case the demurrage demanded is fixed by the foregoing rule. The plaintiffs in error say that by the tariff that governs the matter they can be charged only for the cars actually used and detained by them; that to make the tariff cover a substitution it must be modified by the rules of the Exchange, which cannot be done, and that if there is a claim against anyone, it is a claim against the Lamberts Point Coal Exchange.

The last point may be dispatched in a few words. The articles of organization of the Exchange provide that the member shall be responsible to the Railway for demurrage, and that the shipping instructions, &c., " shall show as the consignee the name of the member for whose account shipped, followed by the words ' care Lamberts Point Coal Exchange Pool—.' " The Coal Company's consignments were in accordance with the agreement, and by the agreement or without it made the Company the consignee. We come therefore to the tariff the construction of which is the only point much argued in the case.

The important clauses are in Rule 3, and Rule 4.

"(b) A car shall be considered as released:

" 1. At the time vessel registers for the cargo or fuel supply of which the coal, coal briquets or coke dumped into such vessel is a part, except that when cars are unloaded before the vessel registers such cars shall be released when unloaded.

" 2. To avoid delay that would be entailed in switching out and delivering on shipper's order, in actual sequence of arrival, cars containing the same grade of coal, as indicated by the identifying consigning names or numbers on the waybills, the dates on which cars should have been so released (as indicated by the record) will be substituted for the dates on which equivalent tonnage

was actually delivered and the detention will be computed on the basis of such substituted dates.

" 3. The dates shipments are transferred by written order and acceptance to another party shall be considered the date of release of the car for the account of the original consignee and subsequent detention shall be charged in the account of the new consignee without any free time allowance."

\*          \*          \*          \*          \*

### " Rule 4.—Demurrage Charges

" Settlement shall be made on the basis of detention to all cars released during the month. The date of arrival notice shall be subtracted from the date of release. From the total days detention to all cars thus obtained, deduct all Sundays and legal holidays following the date of arrival and five (5) days free time allowance for each car, except on cars containing coke for export deduct ten (10) days free time allowance for each car: the remainder, if any, will be the number of days to be charged at the rate of $2.00 per car per day. Excess credit days of any one month cannot be deducted from the excess debit days of another month."

These clauses were construed by the Interstate Commerce Commission in an able opinion as authorizing the ' substitution of any car containing a similar grade of coal for the one ordered dumped,' when the parties have so agreed, and as warranting the charges questioned here. They also were held reasonable as so construed. *Smokeless Fuel Co.* v. *Norfolk & Western Ry. Co.*, 85 I. C. C. 395. The matter is one upon which the opinion of the Commission would carry great weight, even if we thought its conclusion less obvious than we do. See also *Smokeless Fuel Co.* v. *Chesapeake & Ohio Ry. Co.*, 142 Va. 355. The fairness and reasonableness of it ought to prevail against meticulous arguments drawn from the fact that

the rules are made with unassociated shippers most prominently in mind, or from rarely realized possibilities of demurrage being charged where coal is delivered on the credit of cars actually in transit from Bluefield, although those cars are not delayed. In the ordinary course of things cars will be kept on hand to answer the mine owner's credit, and it is for its as well as for the Railway's advantage that they need not be the very cars that the mine owner has used.

*Judgment affirmed.*